HEARD APRIL TERM, 1874.

## GREEN *vs.* JACOBS.

A lien under the "Act to secure advances made for agricultural purposes," &c., contained, at the bottom, the words: "I consider the above instrument of writing a mortgage of all my personal property, such as wagons, horses, cattle," &c.: *Held*, Not to be a legal mortgage, vesting the title and giving the right to seize and sell.

BEFORE GREEN, J., AT MANNING, MAY TERM, 1873.

This was an action by William Green, against Mitchell Jacobs, to recover the possession of a horse.

The case was this: On the 20th March, 1872, one Frank James gave to E. B. Mathews an instrument of writing, purporting to be a lien on his crop of cotton, corn, &c., to be made that year, to secure advances that day made, to the amount of $165, which sum James agreed to pay to Mathews, on the first of October then next, out of his first cotton. The instrument contained at the bottom the following words: " I, Frank James, consider the above instrument of writing a mortgage of all my personal property, such as wagons, horses, cattle," &c. It was recorded in the office of the Register of Mesne Conveyance for Clarendon County, on the same day it bore date.

Mathews assigned the instrument to the defendant, and James having failed to pay the debt, the defendant seized the horse in the possession of the plaintiff, to whom James had sold him after the lien was given.

The defendant asked that the jury be instructed to find for the defendant, because the instrument constituted a mortgage of the horse, and the defendant had a right to seize the same.

His Honor declined so to charge, and instructed the jury that the written instrument gave no authority to the defendant to take the horse out of the possession of the plaintiff. To which ruling defendant excepted.

The jury found a verdict for the plaintiff, and the defendant appealed on the ground that the instrument referred to was a sufficient and valid mortgage of all the personal property of Frank James, and that defendant, on the non-payment of the debt, had the right, as mortgagee, to seize the property referred to in said mortgage.

*Fraser*, for appellant:

The Court, in giving construction to the contract, should have taken it most strongly against the contractor.

No form of words is necessary to constitute a mortgage of personal property. The only essentials are that it be apparent that the property is to be a security for some indebtedness or for the performance of some contract.

The words: " All my personal property, such as wagons, horses, cattle," etc., is a sufficient description of any such personal property in a mortgage.—Chit. on Con., 95 ; 1 Shep. Touch., 87 ; *Calhoun* vs. *Reynolds*, Mell, 305; 7 Cranch R., 237 ; 1 Green. Ev., 334 to 342 and 338, 339 note ; 2 Kent, 3d ed., 556, 557 ; *Menude* vs. *Polony*,

2 DeS., 564; *Ralfe* vs. *Lord,* 2 Dun. & W., 480; Con. & L., 519; *Brown* vs. *Wood,* 6 Rich. Eq., 169; *Johnson* vs. *Vernon,* 1 Bail., 527; 2 Hilliard on Mortgages, 316, 320; 2 Kent, 554, 555, 615, *468; *Read* vs. *Gaillard,* 2 DeS., 552.

*Galluchat,* contra.

June 11, 1874.   The opinion of the Court was delivered by

MOSES, C. J.   The action was for the recovery of a horse.  The plaintiff below purchased it from one Frank James, who had executed a lien on his crop, for advances, to E. B. Mathews, which he (Mathews) assigned to the appellant, Jacobs.  The instrument creating the lien was dated 20th March, 1872.  It recited that Mathews had on that day made advances to the amount of $165, which James agreed to pay out of his first cotton on the first of October then next, and to secure the payment he thereby gave a special lien on his crop of cotton, corn &c., to be made during the coming season, in accordance with the Act of the General Assembly, "to secure advances made for agricultural purposes," &c.  The paper contained, also, the following words: "I, Frank James, consider the above instrument of writing a mortgage of all my personal property, such as wagons, horses, cotton, hogs," &c.  It was recorded in the office of Register of Mesne Conveyance of Clarendon on 20th March, 1872.

The Judge on the trial on Circuit was requested to charge "that the instrument offered is a sufficient mortgage upon the property claimed by the plaintiff, and if it is not so with regard to a third person without notice, it should so be held in this instance, the plaintiff having had notice."  His refusal to do so is assigned as error.  The only question before us is whether the instrument creates a mortgage on the horse, which justified its seizure by Jacobs, after the debt secured by the lien became due.

The words, "all my personal property, such as wagons, horses, &c.," are sufficiently descriptive to pass any of such property as James held at the time of the execution of the instrument.  *Id certum est quod certum reddi potest.*  A deed specifying the character of the property conveyed will transfer all that the grantor may be proved to have held of that description.—*Brown* vs. *Wood,* 6 Rich. Eq., 169.  So if the instrument amounts to a mortgage, it will not fail because of the general description of the property it was intended to affect.

It cannot be doubted that the appellant has an equitable right to claim, through the instrument, a specific lien on the horses, wagons, &c., owned by James at its date, so as to subject them to the payment of his debt for the agricultural advances, but the point we are to consider is, whether it so operates as to transfer the legal title from James and vest it in Mathews. In other words, can the mere acknowledgment of a party, that the paper which he executes primarily for another purpose and to another end, have effect as a formal legal mortgage, so as to attach to it all the elements and incidents which belong to and follow such an instrument, though wanting all of its essential requisitions?

The title to property, save where it is conferred by statutory enactment, through the force of mere possession, rests on muniments which define its character. The limitations and qualifications which restrict the general grant must be expressed in words, which have a technical significance, fit and proper, in the particular case, to define the purpose and intention of the parties. A mere declaration in writing that one considers an instrument executed for a different purpose, also, a deed of a certain piece of land, though signed, sealed and delivered in the presence of two witnesses, would be wanting in the evidence of a grant and release which are necessary to a deed of real estate. A mortgage is a conveyance of land or personal chattels as a security for the performance of some act, generally the payment of money, to be void on a compliance with a specified condition. Words denoting conveyance or transfer are also essential to it, and though a power of sale is not indispensable it is usually included. Depending on the language of a mortgage, nice and intricate questions often arise as to trusts, growing out of the relation of mortgagor and mortgagee, and they must be executed according to the construction which is to be given to the language of the instrument.

It is not wise or politic to dispense with the forms which affect the transfer of property, whether absolute or conditional. It is better and safer to adhere to those to which the community has been accustomed than to substitute a mere declaration of what the instrument is to be considered, in the place of the instrument itself. It may be a more ready mode, both of disposing of property or affecting it with liens or conditions, but at the same time it could not fail to be more fruitful of litigation and the consequences which follow it.

Unless some clear advantage is to be gained, it is safer to adhere to well recognized and established forms of conveyance, sanctioned by long adoption and use, than to legalize departures which do not seem to promise any public benefit.

The motion is dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.